IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC4 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-NC4, Plaintiff/Counter-Defendant<br>V.<br>RA SURASAK KETMAYURA and YING KANOKTIP KETMAYURA, Defendants/Counter-Plaintiffs. | § § § § § § § § § § § § § § § § | A-14-CV-00931-LY-ML |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL,
UNITED STATES DISTRICT JUDGE

Before the Court are the Second Amended Counterclaim [Dkt. #20], filed by Defendants/Counter-Plaintiffs Surasak Ketmayura and Ying Kanotip Ketmayura (collectively, "Defendants" or "the Ketmayuras"), the Motion to Dismiss Defendants' Second Amended Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. #24], filed by Plaintiff/Counter-Defendant Deutsche Bank National Trust Company, as Trustee for the Registered Holders of the Morgan Stanley ABS Capital I Inc. Trust 2007-NC4 Mortgage Pass Through Certificates, Series 2007 NC-4 ("Plaintiff" or "Deutsche Bank"), Defendants' Response to Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. #25], and Plaintiff's Reply in Support of its Motion to

Dismiss Defendants' Second Amended Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. #26].

The Motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

### A. The Ketmayuras' Lien, Default, and Acceleration

On November 15, 2006, Defendants executed a $1,000,000 Texas Home Equity Adjustable Rate Note ("the Note"), secured by their property located at 315 S. Commons Ford Road, Austin, Travis County, Texas 78733 ("the Property"). Compl. [Dkt. #1] Ex. A. Concurrently with the Note, Defendants executed a Texas Home Equity Security Agreement (collectively with the Note, the "Loan Agreement.") *id.* at Ex. B, granting the lender and its successors a security interest in the property. Defendants have not made a payment on their million-dollar Loan Agreement since before July 1, 2007. *Id.* at ¶ 14; *see also* Second Am. Counterclaim [Dkt. #20] at ¶ 14.

Plaintiff, Deutsche Bank, asserts it is the current holder of the Loan Agreement, Compl. [Dkt. #1] at ¶ 13, and seeks a judicial foreclosure and attorney's fees. *Id.* at ¶¶ 16-18. Defendants have filed a counterclaim seeking to quiet title to the property on the grounds that they are the rightful owners of the Property by virtue of a Warranty Deed recorded as Instrument

No. 0773600853 in the Official Public Records of Travis County Texas and have occupied and held the property in open, adverse, and continuous possession at all times since April 27, 1981, and Plaintiffs' foreclosure claim is barred by Texas' four year statute of limitations on foreclosures. Second Am. Counterclaim [Dkt. #20] at ¶14 (citing TEX. CIV. PRAC. & REM. CODE § 16.035.)

The elements of a cause of action to quiet title are (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant, and (3) the claim, though facially valid, is invalid or unenforceable. *Sadler v. Duvall,* 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied). The movant seeking to quiet title bears the burden to establish his "superior equity and right to relief" and must prove "right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 532 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  In this case, Plaintiff's Motion to Dismiss does not challenge the Ketmayuras' assertion that they are the rightful owners of the property by virtue of the Warranty Deed and/or adverse possession.[1] Plaintiff has instead argued that its foreclosure interest in the property is valid and enforceable because the statute of limitations has not expired. *See generally* Mot. Dism. [Dkt. #26].[2]

The statute of limitations on foreclosures typically starts running when a debtor receives both (1) notice of the lender's intent to accelerate the debt and (2) notice that the debt is actually

---

[1] The Court notes, however, that "with respect to mortgagors in default who claim adverse possession, the statutory period does not begin to run until title to the property passes at the foreclosure sale." *Jeong v. Fannie Mae*, No. A-14-CA-920-SS, 2014 U.S. Dist. LEXIS 157799, *9 (W.D. Tex. Nov. 6, 2014) (citing *Warnecke v. Broad*, 138 Tex. 631, 161 S.W.2d 453, 455 (Tex. 1942)).  It therefore appears the Ketmayuras cannot establish superior title by adverse possession, as no foreclosure sale has taken place in this matter.  *See id.*

[2] The statute of limitations argument raised by the Ketyamuras is a valid affirmative defense to Deutsche Bank's foreclosure claim regardless of whether it supports an independent quiet title counterclaim.  *See* TEX. CIV. PRAC. & REM. CODE § 16.035.

accelerated. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). However, the parties may abandon acceleration by agreement or conduct, and thereby return the note to its original state of maturity (restarting the limitations period). *Id.* at 566-67.

The Ketmayuras first received notice of the lender's intent to accelerate the debt due under the Loan Agreement on August 27, 2007. Resp. [Dkt. #25] at Ex. A. They further received the lender's Notice of Acceleration of the Maturity of the Debt on November 6, 2007. *Id.* at Ex. B. These notices were sufficient to start the statute of limitations on the lender's right to foreclose. *Holy Cross*, 44 S.W.3d at 566-67.

### B. The Lender's Right to Elect Nonjudicial or Judicial Foreclosure

At this point, a word on the different types of "foreclosure" available in Texas is appropriate. "When, as in this case, the security instrument in a home-equity loan contains a power of sale provision, the lender has a choice of remedies." *Steptoe v. JPMorgan Chase Bank, N.A.*, No. 1-14-00813-CV, 2015 Tex. App. LEXIS 2588, *7-8 (Tex. App.—Houston [1st Dist.] Mar. 19, 2015, no pet.) (citing TEX. R. CIV. P. 735.3). Under these circumstances, the lender may (1) choose to file a claim for judicial foreclosure, TEX. R. CIV. P. 735.3, (2) file a claim for judicial foreclosure as a counterclaim in a suit initiated by the borrower, *Steptoe*, 2015 Tex. Ap.. LEXIS 2588, *8, or (3) pursue a nonjudicial foreclosure, or "Expedited Foreclosure Proceeding" based on the power of sale in the security intstrument. TEX. R. CIV. P. 736.

"As its name suggests, Rule 736 provides a faster, more streamlined alternative to judicial foreclosure." *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The only issue that may be decided in a Rule 736 proceeding is whether the provisions of the security instrument entitle the lender to sell the property using the procedures outlined in Texas Property Code § 51.002 for a public auction. TEX. R. CIV. P.

736(7).  "The district court's determination of whether to grant or deny the application is not intended to be a binding adjudication of the merits of any disputes between a lender and a borrower." *Huston*, 359 S.W. 3d at 682.  To the contrary, the rule states that the district court's determination is without any preclusive effect.  TEX. R. CIV. P. 736(9).

Should the borrower file an independent lawsuit contesting the lender's right to foreclose, the non-judicial foreclosure application is automatically abated and dismissed.  *Id.* at R. 736(11).  The statutory language concerning automatic abatement and dismissal is mandatory.  *Id*.  Therefore, "a trial court is required to dismiss an abated Rule 736 proceeding and is without discretion to act otherwise."  *In re Dominguez*, 416 S.W.3d 700, 704 (Tex. App.—El Paso 2013, orig. proceeding).

If a lender's application for foreclosure is automatically dismissed because the borrower filed an independent lawsuit, the lender may elect to pursue judicial foreclosure as a counterclaim or separate suit, but is not deprived of the right to simply re-apply for nonjudicial foreclosure after the borrower's suit is dismissed.  *Steptoe*, 2015 Tex. Ap.. LEXIS 2588, *10-12 (citing  *Kaspar v. Keller*, 466 S.W.2d 326, 329 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.)).

### C.  The Ketmayura's Suit to Enjoin the Nonjudicial Foreclosure Application

In this case, the lender filed an Application for Expedited Nonjudicial Foreclosure on September 11, 2008.  Resp. [Dkt. #25] at ¶ 5.7.  The Ketmayuras filed an independent state court action contesting the lender's right to foreclose on January 5, 2009.  *Id.* at ¶ 5.8.  Pursuant to Texas Rule of Civil Procedure 736(11), the Ketmayura's filing automatically abated and dismissed the lender's application for nonjudicial foreclosure.  On April 2, 2010, the Ketmayuras voluntarily dismissed their state court suit challenging the foreclosure.  *Id.* at ¶ 5.12.

The Ketmayuras filed for bankruptcy on March 26, 2010. Resp. at ¶ 5.13. The Ketmayuras concede the statute of limitations on foreclosure was tolled during the pendency of this bankruptcy proceeding, which continued until June 29, 2010. *Id.* at ¶ 5.13. *See also* 11 U.S.C. § 362(a).

### D. Deutsche Bank's Attempt to Restart the Limitations Period

On December 10, 2012, Deutsche Bank (a successor in interest to the original lender) sent the Ketmayuras a second Notice of Default and Intent to Accelerate the Maturity of the Debt. *Id.* at Ex. D. On January 15, 2013, Deutsche Bank sent a second Notice of Acceleration of the Maturity of the Debt. *Id.* at Ex. E. On May 17, 2013, Deutsche Bank sent the Ketmayuras a Notice of Rescission of Acceleration of Loan Maturity, stating the January 15, 2013 acceleration "and all prior notices of acceleration" were hereby rescinded. *Id.* at Ex. F. The Ketmayuras responded by filing a "Notice of Lien Expiration" in the Travis County property records on June 19, 2013, *id.* at ¶ 5.19, and gave Deutsche Bank notice that they objected to the unilateral Notice of Rescission in a letter dated July 1, 2013. *Id.* at Ex. H.

### E. Abandonment of the Acceleration and/or Tolling of the Limitations Period

The Ketmayuras assert the four year statute of limitations on foreclosure began to run on November 7, 2006, and was tolled *only* during the 94 days in which their bankruptcy proceeding was pending. *Id.* at ¶ 7.2. The Ketmayuras further assert that Deutsche Bank never abandoned its 2006 notice of acceleration, and their 2009 state court lawsuit did not toll the limitations period because it did not prevent Deutsche Bank from seeking to foreclose on the Property. *Id.* at ¶¶ 7.3-7.4. The Ketmayuras contend that, since the November 6, 2007 acceleration was not abandoned and the four year statute of limitations was tolled only by the 94-day bankruptcy proceeding, the statute of limitations "expired 4 years and 94 days later on February 8, 2012."

6

*Id.* at ¶ 7.6.  According to the Ketmayuras, Deutsche Bank's actions from December of 2012 through the present are ineffective to revive the note.  *See id.*

Deutsche Bank contends the state court suit, which had the effect of dismissing the September 11, 2008 Application for Expedited Nonjudicial Foreclosure, constituted abandonment of the November 7, 2006 acceleration.  Mot. Dism. [Dkt. # 24] at ¶¶ 10-13.  Additionally and in the alternative, Deutsche Bank contends that if the November 7, 2006 acceleration was not abandoned, it was tolled by the state court suit, which was pending for 456 days.  *Id.* at ¶14.  Some of this period overlapped with the bankruptcy stay, *id.* at ¶ 17, but if this tolling framework is correct, the end result is that Deutsche Bank would be entitled to 456 days of tolling for the state court suit and 84 days of tolling for the non-concurrent portion of the bankruptcy proceedings, for a total of 540 days of tolling.  *Id.* at ¶¶ 18-19.  By these calculations, the foreclosure remedy would not expire until April 29, 2013.  *Id.*

Deutsche Bank contends that, because the January, 2013 Notice of Acceleration "reset" the limitations period before it expired, the statute of limitations has not run on their foreclosure claim.  *Id.* at ¶ 19.  The Ketmayuras object that, even if these calculations are correct, Deutsche Bank could not unilaterally rescind the original acceleration over their objection. Resp. [Dkt. # 25] at ¶¶ 8.3.4-8.3.14.

## II. STANDARD OF REVIEW

### A. Jurisdiction

This case was originally filed in federal court by Plaintiff, Deutsche Bank.  The court affirmatively finds that diversity jurisdiction exists in this case.  28 U.S.C. § 1332(a).  Plaintiff Deutsche Bank is a corporation and trustee of a trust. Compl. [Dkt. #1] at ¶ 6.  When determining

the citizenship of the real parties in interest for purposes of diversity jurisdiction, it is the citizenship of the trustee which controls, not the citizenship of the beneficiaries of the trust. *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 464–66. 100 S. Ct. 1779, 1783 (1980); *Manufacturers and Traders Trust Co. v. HSBC Bank USA, N.A.*, 564 F. Supp.2d 261, 263 (S.D.N.Y. 2008). A corporation is a citizen of its state of incorporation and state where its principal place of business is located. 28 U.S.C. § 1332(c). Deutsche Bank is organized under the laws of New York and has its principal place of business in California. Compl. [Dkt. #1] at ¶ 6. Therefore, Deutsche Bank is a citizen of New York and California for purposes of diversity jurisdiction. 8 U.S.C. § 1332(c). Defendants are both citizens of Texas. Compl. [Dkt. #1] at ¶ 7. Therefore, complete diversity exists for purposes of 28 U.S.C. § 1332(a). [3]

### B.  Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a claim that, on its face, "fails to state a claim upon which relief may be granted." In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint, and must view the allegations as a whole in the light most favorable to the non-movant. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1965-66 (2007). Thus, in considering a motion to dismiss, the court must

---

[3] Because this case was originally filed in federal court, not removed from state court, the procedural bar against removal of an "in-state-defendant" does not apply. *See* 28 U.S.C. § 1441(b).

initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).  If not, "the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'"  *Id*. (quoting FED. R. CIV. P. 8(a)(2)).

### III. ANALYSIS

In this case, there is little disagreement about sufficiency of the Ketmayuras' factual allegations.  Rather, the parties join issue on whether, if the facts are as alleged by the Ketmayuras, the statute of limitations has expired on Deutsche Bank's ability to foreclose on the Ketmayuras' defaulted million-dollar mortgage.

> The Texas Civil Practice and Remedies Code provides:
>
> > (a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.
> >
> > (b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

TEX. CIV. PRAC. & REM. CODE § 16.035.  On a note or deed of trust that contains an optional acceleration clause, such as the Loan Agreement in this case, "the action accrues only when the holder actually exercises its option to accelerate."  *Holy Cross*, 44 S.W.3d at 567.  "Once acceleration has been exercised, the statute of limitations period ***can be reset*** with noteholders maintaining their right to re-accelerate at a later date if the acceleration is abandoned." *Rosas v. America's Servicing Co. (In re Rosas),* 520 B.R. 534, 539 (W.D. Tex. 2014) (citing *Holy Cross*, 44 S.W.3d at 567) (emphasis added).

### A. The 2006 Acceleration Was Not Abandoned

It is undisputed that the Loan Agreement in this case was properly accelerated, starting the statute of limitations on foreclosure, on November 7, 2006. Therefore, the first important question is whether the 2006 acceleration was abandoned within the limitations period, "resetting" the statute of limitations. *In Re Rosas*, 520 B.R. at 539 (citing *Holy Cross*, 44 S.W. 3d at 566-67). Deutsche Bank contends the Ketmayuras, by filing their state court suit, and the lender, by dismissing its September 11, 2008 Application for Expedited Nonjudicial Foreclosure pursuant to Texas Rule of Civil Procedure 736, together abandoned the November 7, 2006 acceleration through their litigation conduct. Mot. Dism. [Dkt. # 24] at ¶¶ 10-13.

#### 1. A Rule 736 Automatic Dismissal Is Not Abandonment

In Texas, a noteholder can abandon acceleration by taking a voluntary non-suit in an action on the note. *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ). *Denbina*, the seminal case on "abandonment by non-suit," concerned a voluntary non-suit by the lender that was entirely intentional and was, in fact, specifically intended to abandon acceleration. *Id.* "[T]he City contends that it had a right to take a non-suit in the prior action, and that by doing so it revoked or withdrew its option to accelerate maturity of the final installment." *Id.* at 462. Following in the footsteps of *Denbina,* one federal court applying Texas law has found that a lender's voluntary motion to dismiss an application for expedited foreclosure constitutes abandonment of acceleration. *Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, No. 5:14-CV-862-DAE, 2015 U.S. Dist. LEXIS 9220, *2-3 (W.D. Tex. Jan. 27, 2015).

In contrast, an application for expedited foreclosure that is dismissed on procedural grounds—not at the lender's election—has been found insufficient to abandon acceleration.

*Burney v. Citigroup Global Mkts. Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App. Dallas 2008, no pet.) Specifically, the *Burney* court found that the involuntary dismissal of an application for expedited foreclosure (a Rule 736 application) for want of prosecution did not establish abandonment of the lender's notice of acceleration, and the statute of limitations continued to run on the lender's ability to foreclose after this dismissal of the expedited foreclosure application. *Id.* at 902-03. Similarly, another Texas court, the *Thompson* court, found that a bankruptcy stay that prevented foreclosure did not constitute abandonment of the lender's acceleration of the note; the ability to foreclose (and the remaining limitations period on this remedy) picked up where the bankruptcy proceeding ended without any requirement that the acceleration be "reinstated." *Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 30-31 (Tex. App. Dallas 1992, no writ.). Read together, these cases suggest there is a difference between intentional litigation conduct that evidences a lender's intent to abandon acceleration of the debt, and mere litigation procedure that does not commit the lender to abandonment of acceleration. *Compare Denbina*, 516 S.W.2d at 463 with *Burney*, 244 S.W.3d at 903; *Thompson*, 840 S.W.2d at 30-31.

No Texas court has addressed whether a dismissal of an application for expedited foreclosure triggered by the filing of an independent lawsuit, as required by Rule 736(11), constitutes abandonment of acceleration by the lender.[4] Recently, however, a federal District Court applying Texas law found that the dismissal of an application for expedited foreclosure

---

[4] The statutory language itself suggests that Rule 736 is not intended as anything other than "a procedural device to obtain authorization to proceed with the remedy of foreclosure." *Biedryck v. United States Bank Nat'l Ass'n*, No. 01-14-00017-CV, 2015 Tex. App. LEXIS 4794, 12-13 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet. h.) (citing TEX. R. CIV. P. 736, cmt.) Rule 736 expressly states "No order or determination of fact or law under Rule 736 shall be res judicata or constitute collateral estoppel or estoppel by judgment in any other proceeding or suit. . . . The denial of an application under these rules shall be without prejudice to the right of the applicant to re-file the application or seek other relief at law or in equity in any court of competent jurisdiction." TEX. R. CIV. P. 736(9).

11

under the procedural mechanism of Rule 736 does not rise to the level of a voluntary non-suit or other litigation conduct indicating abandonment of the acceleration of the note. *Murphy v. HSBC Bank USA*, No. H-12-3278, 2015 U.S. Dist. LEXIS 37401, *35-36 (S.D. Texas Mar. 25, 2015). This holding is consistent with *Burney*'s finding that an involuntary procedural dismissal does not constitute abandonment of acceleration. 244 S.W.3d 900, 903.  *Murphy* can also be harmonized with the District Court's holding in *Bitterroot*; an automatic procedural dismissal is qualitatively different from a voluntary dismissal by the lender.  *Compare Murphy*, 2015 U.S. Dist. LEXIS 37401, *35-36 with *Bitterroot*, 2015 U.S. Dist. LEXIS 9220, *2-3.  The abatement and dismissal of a Rule 736 application for judicial foreclosure upon the filing of an independent lawsuit is nothing more than the automatic application of the statute; there is no discretion on the part of the lender or the court involved.  *In re Dominguez*, 416 S.W.3d at 704.

In fact, Texas courts have expressly held that the automatic dismissal provision applicable to Rule 736 applications for expedited foreclosure "should not be permitted to destroy or impair the mortgagee's contractual right to foreclosure under the power of sale . . .." *Kaspar v. Keller*, 466 S.W.2d 326, 328-29 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.).  The *Kaspar* court expressly rejected the notion that a debtor could force a lender to an "election of remedies" simply by filing suit.  *Id.*  Under the *Kaspar* court's reasoning, a lender whose application for nonjudicial foreclosure has been abated or dismissed because the debtor filed suit may opt to reinstate its application for nonjudicial foreclosure as soon as the debtor's suit is dismissed, or may file a separate suit to address its claims while the debtor's suit is pending, or may seek foreclosure in a counterclaim in the debtor's suit.  *Id.*; *see also Murphy*, 2015 U.S. Dist. LEXIS 37401, at *35-36 (collecting cases applying the "*Kaspar* rule.").   In light of the *Kaspar* rule, the mere fact that the 2008 Application for Nonjudicial Foreclosure was automatically dismissed

under Rule 736 when the Ketmayuras filed suit in no way indicates the lender was abandoning its right to pursue this or any other remedy. *See Burney*, 244 S.W.3d at 903; *Murphy*, 2015 U.S. Dist. LEXIS 37401, *35-36.

A lender can certainly abandon acceleration by conduct after applying for an expedited foreclosure under Rule 736—for example, by accepting further payments and negotiating payment plans with the borrower after the application for nonjudicial foreclosure has been granted. *Biedryck v. United States Bank Nat'l Ass'n*, No. 01-14-00017-CV, 2015 Tex. App. LEXIS 4794, 12-13 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet. h.). There is no allegation, however, that any payments or payment negotiations took place after the 2006 acceleration in this case. The original lender simply let the procedural dismissal provisions of Rule 736 take effect. *See In re Dominguez*, 416 S.W.3d at 704. Therefore, Deutsche Bank has failed to establish the 2008 dismissal of the lender's Application for Nonjudicial Foreclosure established abandonment of the 2006 acceleration as a matter of law. *See Burney*, 244 S.W.3d at 903; *Murphy*, 2015 U.S. Dist. LEXIS 37401, *35-36.

The abandonment of acceleration is very often a fact question concerning the conduct and understanding of the parties. *See, e.g., Biedryck*, 2015 Tex. App. LEXIS 4794, #12-13 (specific terms of parties' agreement expressed intent not to abandon original acceleration of debt in the event of default on repayment plan). It may be that, in discovery, Plaintiff will be able to point to some conduct of the original lender and/or the Ketmayuras that indicates an understanding that the dismissal of the 2008 Application for Nonjudicial Foreclosure was intended as an abandonment of the 2007 acceleration of the Loan Agreement. At the motion to dismiss stage, however, the facts alleged by the Ketmayuras must be taken as true, and these facts do not

support a finding that the 2007 acceleration was abandoned when the 2008 Application for Nonjudicial Foreclosure was automatically dismissed on procedural grounds.

### 2. The Ketmayuras Objected to the 2012-13 Notices

The next alleged abandonment of the note occurred from December, 2012 to January, 2013, when Deutsche Bank attempted to "re-accelerate" the Loan Agreement. The parties argue over whether Deutsche Bank's unilateral abandonment of the previous acceleration is effective, and indeed, "there is no Texas caselaw on the validity of unilateral notices of rescission of acceleration." *Callan v. Deutsche Bank Truste Co. Ams.*, No. 4:13-cv-247, 2015 U.S. Dist. LEXIS 35626 (S.D. Tex. Mar. 21, 2015). On June 9, 2015, however, the Fifth Circuit addressed the issue of unilateral abandonment and unequivocally found that "a lender can unilaterally abandon an acceleration" under Texas law. *Leonard v. Ocwen Loan Servicing, LLC*, No. 14-201611, slip op. at 6 (5th Cir. June 9, 2015) (not designated for publication).

Before reaching the issue of whether Deutsche Bank's conduct was sufficient to unilaterally rescind the acceleration of the Loan Agreement under *Leonard*, the court must address whether the limitations period was tolled or had already expired at the time Deutsche Bank attempted to reset it in this manner. *See Burney*, 244 S.W.3d at 903 (lender could not revive right to foreclose after statute of limitations expired).

### B. Texas "Litigation Tolling" Rules

In a diversity case, such as this one, the court applies the tolling rules (as well as the applicable statute of limitations) of the forum state. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. Tex. 1992). "Texas courts have held that as a general rule, where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is

14

thus prevented should not be counted against him in determining whether limitations have barred his right." *Id.* (collecting cases). The key is whether the pending legal action prevents the exercise of a legal remedy. *Id.*

### 1. Tolling Applies Only When Parallel Litigation is Impossible

The "pending legal action" tolling rule has been rejected in a variety of contexts where the pending legal proceeding does not effectively prevent a would-be litigant from pursuing a legal remedy while the proceeding is pending. *See, e.g., Murphy v. Campbell*, 964 S.W.2d 265, 272 (Tex. 1997) (a pending tax case did not toll the statute of limitations on a malpractice suit against an accountant because "filing a malpractice suit against Touche Ross would not have affected its testimony in the tax case."); *Newby v. Enron Corp.*, 542 F.3d 463, 471 (5th Cir. 2008) (statute of limitations was not tolled where an injunction in a pending suit "simply required the [claimant] to take another step and seek judicial approval" before filing); *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684-685 (5th Cir. 1998) (statute of limitations was not tolled while plaintiff pursued internal university remedies not required by law to satisfy administrative exhaustion on his employment claims); *Scott v. Kerrville*, No. 02-11-00198, 2012 Tex. App. LEXIS 9829 (Tex. App.—Fort Worth Nov. 29, 2012, no pet.) ("even if Scott had offered summary judgment evidence of legal proceedings subsequent to 1998, those proceedings would not have tolled the statute of limitations in this case" because they would not have been an impediment to his suit against the City for wrongful arrest and conviction); *Steed v. Steed,* 908 S.W.2d 581, 584-85 (Tex. App.—Fort Worth 1995, writ denied) (statute of limitations not tolled due to pending appeal of divorce action because pending appeal was not a legal impediment to the plaintiff's tort action against her mother-in-law).

2.     *Tolling Does Not Apply to Suits Challenging Foreclosure Sales*

Specifically, with regard to the statute of limitations on foreclosures, the Texas Supreme Court held over 100 years ago that a suit for an injunction against nonjudicial foreclosure does not toll the statute of limitations, because it is no impediment to the lender's ability to sue on the note or seek judicial foreclosure of the property. *Davis v. Andrews*, 30 S.W. 432, 529 (Tex. 1895). The *Davis* court's reasoning and holding were followed in similar circumstances in *Pioneer Bldg. & Loan Ass'n v. Johnston*, 117 S.W.2d 556, 559 (Tex. Civ. App.—Waco 1938, writ dism'd). Most recently, in April of 2015, a Texas appellate court followed the reasoning of *Davis* and *Pioneer* and rejected a tolling argument almost identical to the one advanced by Deutsche Bank in this case. *Landers v. Nationstar Mortg., LLC*, No. 12-14-00261-CV, 2015 Tex. App. LEXIS 3419, *6-8 (Tex. App. Tyler Apr. 8, 2015) (pet. rev. to be filed).[5] The *Landers* court, examining a borrower's suit to enjoin a nonjudicial foreclosure and the dismissal of the lender's nonjudicial foreclosure application, noted "[i]n this case, the injunctions prevented Nationstar from . . . 'conducting a foreclosure sale' of the subject property. Neither injunction restrained Nationstar from filing suit for judicial foreclosure of its lien." *Id.* The *Landers* court reasoned that, "as in *Davis* and *Pioneer*, the limitations period for such a suit was not tolled, and it expired . . . four years after the acceleration of the debt . . . ." *Id.*

The same reasoning applies in this case. Because the Rule 736 dismissal of the lender's Application for Nonjudicial Foreclosure did not operate as an abandonment of the 2006 acceleration, and the Ketmayura's 2009 suit challenging the nonjudicial foreclosure did not preclude the lender from suing for judicial foreclosure, the statute of limitations on foreclosure

---

[5] Nationstar Mortgage is seeking the Texas Supreme Court's review of this decision, but has obtained an extension to file its petition for review until June 25, 2015. *See Nationstar Mortgage, L.L.C. v. Landers*, No. 15-0390, Order Granting Motion for Extension of Time to File Petition for Review (Tex. May 22, 2015).

was not tolled by the state law suit. *Davis*, 30 S.W. at 529; *Landers*, 2015 Tex. App. LEXIS 3419 at *8-9. Therefore, taking into account the tolling that did stay the limitations period during the Ketmayuras' bankruptcy proceedings, the statute of limitations on the foreclosure remedy expired as to the Ketmayura's Property on or about February 8, 2012, or 4 years and 94 days after the November 7, 2006 acceleration of the Loan Agreement. *See Landers*, 2015 Tex. App. LEXIS 3419 at *8-9.

### C. Unilateral Rescission is Mooted By the Expiration of Limitations

Given the effect of the statute of limitations in this case, the undersigned will not reach the arguments presented by the parties over whether Deutsche Bank's unilateral attempt to restart the clock by rescinding the original acceleration in 2012 was effective. Despite the Fifth Circuit's recent unpublished opinion that unilateral rescission is possible, *Leonard*, No. 14-201611, slip op. at 6, this is an area of Texas state law that is still unsettled. *Callan*, 2015 U.S. Dist. LEXIS 35626 at *21. Deutsche Bank's attempts to "reaccelerate" the already-accelerated loan are not the same as the lender's actions requesting payment of arrears in *Leonard,* and therefore the *Leonard* court's reasoning finding unilateral rescission is not only possible, but actually occurred, may or may not apply to the facts of this case. *See Leonard*, No. 14-201611, slip op. at 6 ("Because these cases demonstrate that a lender can unilaterally abandon an acceleration, the issue now becomes whether Ocwen's actions constituted abandonment of the 2009 acceleration.").

It is not necessary to make an *Erie* guess on the precise contours of what constitutes effective unilateral rescission when the matter in question can be decided with reference to long established principles of Texas law. Since the statute of limitations on foreclosure of the Ketmayura's Loan Agreement expired on February 8, 2012, some nine months before Deutsche

17

Bank attempted to re-issue its Notice of Intent to Accelerate and eleven months before Deutsche Bank attempted to re-issue its Notice of Acceleration, the Ketmayuras have stated a viable counter-claim to quiet title on the grounds that that their interest in the property, as evidenced by the Warranty Deed, is superior to Deutsche Bank's because the statute of limitations bars Deutsche Bank's attempt to foreclose on the Property. *See Burney*, 244 S.W.3d at 903.[6]

### IV. RECOMMENDATIONS

For the reasons stated above, the undersigned RECOMMENDS that the Motion to Dismiss Defendants' Second Amended Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. #24] be DENIED.

### V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106

---

[6] In the alternative, the Ketmayuras have at a minimum asserted an affirmative defense that should not be stricken or dismissed at the pleading stage. *See* Tex. Civ. Prac. & Rem. Code § 16.035.

S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

Signed June 10, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE